[Filed June 24, 1886.]

## STATE *v.* WILLIAM DUNBAR.

CRIMINAL LAW—CHARGE TO THE JURY—INTENT.—Upon an indictment un-
der a statute prohibiting the sale of or offering for sale oleomargarine,
unless the same shall be plainly marked so as to establish its true char-
acter, where the only evidence of an offer to sell was that the defendant,
a grocer, kept a small quantity of oleomargarine not marked as such in
his salesroom, an instruction to the jury that "if the defendant kept the
article described without any mark plainly distinguishing the same from
genuine dairy products, in his common salesroom, with other produce he
was dealing in, and publicly exposed and exhibited the same with intent
to offer it for sale, then the charge is made out; but you are to pass upon
the question of intent," etc.—is not erroneous.

SAME—INTENT TO SELL.—The exposing of such substance, unmarked, with
other pure butter, or groceries, upon the shelves or counter of a sales-
room, is an act from which an intent to sell may be inferred in the ab-
sence of rebutting evidence, and the instruction given does not preclude
him from showing the fact.  THAYER, J., dissenting.

MULTNOMAH COUNTY.  Defendant appeals.  Affirmed.

*W. H. Adams,* for Appellant.

*W. B. Gilbert,* for Respondent.

LORD, J.  The defendant was indicted, tried, and con-
victed of offering for sale oleomargarine without its being
marked so as to distinguish it from the genuine dairy
products.  The statute under which the conviction was
procured read as follows: " No person or persons shall
sell, supply, or offer for sale or exchange, any oleaginous
substance, or any compound of the same, other than that
produced from unadulterated milk or cream of the same,
unless the same, and the packages containing the same,
shall be marked so as to plainly establish its true char-
acter and distinguish it from the genuine dairy prod-
ucts," etc.  (Laws 1885, p. 128, sec. 3.)  The error
assigned is to the following instruction by the court:

" If you are satisfied beyond a reasonable doubt that the defendant kept the article described in the indictment, without any mark plainly distinguishing the same from the true genuine dairy products, in his common sales-room, with other produce he was dealing in, and publicly exposed and exhibited the same with the intent to offer it for sale, then the charge of offering to sell it is made out; but you are to pass upon the question of intent, and if you find that he had no intention of offering said article for sale, or had withdrawn the same from sale, then you should find the defendant not guilty."

It appears by the bill of exceptions that there was evidence tending to prove that the defendant kept a small quantity of oleomargarine, not marked as such, in his salesroom, but there was no evidence other than that introduced, tending to prove that he made any overt or individual offer of this substance for sale. Under the instruction given, the jury must have found that the defendant kept oleomargarine in stock on his shelves exposed to the public in the same manner as other goods or merchandise were kept for sale, and that he so kept it intending to sell it, and to sell it in the unmarked condition in which it was found. The defense is, that to constitute the offense charged under the statute there must be some overt act of offering for sale; that the intent may exist in the mind without any act done in pursuance of such intent, and that, therefore, the fact of having the oleomargarine unmarked, and exposed with other goods or merchandise in the salesroom, unaccompanied by any overt act, or individual offer to sell it, is not an offense within the meaning of the statute.

But is not the exposing of such substance, unmarked, with other pure butter or groceries, upon the shelves or counter of a salesroom, an act or circumstance from which an intent to offer it for sale may be inferred by

the jury in the absence of any rebutting evidence? This is all the instruction imports. It simply says, in effect, that it should be presumed that when a groceryman places the prohibited article upon his shelves, and displays the same with other goods in unmarked packages, intending to sell them in that condition, he is offering them for sale; but that such presumption is only *prima facie*, leaving the defendant free, as a matter of fact, to prove that they were not offered for sale, that is, that they were not for sale in that condition.

Now, we all know that when a man engages in the business of merchandising, places his goods upon shelves and counter and in show-windows, and throws open the door of his store to the public, it is ordinarily and usually understood that the goods thus exposed are offered for sale, and considered an invitation by the merchant to all who are willing to enter to purchase. Indeed, it may be said to be a matter of common knowledge that it is the general practice of merchants to thus expose or offer their goods for sale, often displaying them quite attractively, to more certainly catch the eye of the passer-by, and induce him to enter and purchase them. And when goods are thus exposed, it would hardly occur to any one to inquire of the merchant whether he was offering such goods for sale. On the contrary, he would act on the assumption, justified by common experience, that they were offered for sale, and inquire the price. Laws are usually enacted with some reference to the common understanding and customs of men in respect to the subject-matters which concern their business transactions. So that when goods or merchandise are exhibited from the show-windows or shelves of a store, we have a right to presume, sanctioned by common usage and understanding, that he who puts them there offers them for sale; and if the fact is otherwise, let him show it.

OREG. XIII.—38

Goods, therefore, may be offered for sale without any overt act of solicitation.

Under the internal revenue act, the business of a retail dealer is defined as follows: " Every person who *shall sell or offer for sale* foreign or domestic spirits . . . . in quantities of three gallons or less . . . . shall be regarded as a liquor dealer under this act." In *United States* v. *Dodge*, Deady, 188, Mr. Justice Deady very aptly and concisely states what may constitute an offer for sale under this act. He says: "The license must be first obtained, and then, and not before, the party is at liberty to sell, or *offer* for sale, liquor in less quantities than three gallons. The liquor may be offered for sale without a special or personal solicitation of any particular person to become a purchaser. It may be done by general advertisements in the press, or by exhibition of signs or symbols in the vicinity of the place of the alleged business, or by having the article on sale, with *intent* to dispose of it to any offering to purchase." It is true that a merchant might expose with other goods for sale some article that he did not intend to sell, but the instruction does not preclude him from showing the fact.

It is not perceived in what respect the instruction was error, and the consequence is that the judgment must be affirmed.

THAYER, J. (dissenting). I concur in the general reasoning expressed in the opinion of the majority of the court in this case. I agree that if the appellant kept the oleomargarine without any mark to distinguish it from genuine dairy products, in his common salesroom, with other produce he was dealing in, and publicly exposed and exhibited the same, with the intent to offer it for sale, it was proper evidence to be submitted to the jury; but I do not think that it necessarily made out, as

the court instructed, "the charge of offering to sell." The jury might have been justified in finding from such evidence, and other circumstances, an offer for sale contrary to the provision of the act. The court, however, had no right, as I view it, to instruct the jury that the evidence of itself proved the charge, though it may have had a tendency to prove it. To prove the charge required more evidence than an offer to sell—a further fact had to be made out. Proof of an offer for sale without being marked so as to plainly establish its true character, and distinguish it from the genuine dairy products, was essential. The mere keeping of the article in the appellant's salesroom, with intent to offer it for sale, was not, certainly, sufficient, unless it could be inferred therefrom that he intended selling it without being marked as required by the provisions of the act. The instruction, in any view, it seems to me, was too narrow. Merely having the oleomargarine in the appellant's salesroom unmarked as such, although he intended offering it for sale, was not criminal *per se*. It did not establish an offer for sale without being marked, and yet such was the effect of the instruction. The law was not intended to prevent the sale of oleomargarine; it was intended to prevent deception, and therefore required that the true character of it be designated before selling or offering it for sale. The *intent* to sell it, or offer it for sale, is not an offense. The appellant, of course, intended to sell the commodity, but the hypothesis upon which the instruction was based did not justify the conclusion that he intended to sell it without designating its true character, nor, in my opinion, constitute an offer to sell it without such designation.

I think the judgment should be reversed, and the case remanded for a new trial.